UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
ORLANDO DIVISION

SAMEH GHAREEB,

Plaintiff,

v.                                            Case No. 6:25-cv-2190-JA-RMN

BETHUNE–COOKMAN
UNIVERSITY, INC.,

Defendant.

## ORDER

Plaintiff, Sameh Ghareeb, brings this action against his former employer, Bethune–Cookman University, Inc. under Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e *et seq.* (Doc. 1). Bethune–Cookman filed a motion to dismiss (Doc. 19) arguing that Mr. Ghareeb's complaint improperly includes allegations not contained in his administrative charge and otherwise fails to state a claim. Mr. Ghareeb responded in opposition. (Doc. 24). After careful review, the Court concludes that Bethune–Cookman's arguments are without merit. Thus, Bethune–Cookman's motion to dismiss must be denied.

## I.   BACKGROUND

Plaintiff, Sameh Ghareeb, is a Middle Eastern male of Jordanian national origin who was employed by Bethune–Cookman from August 2016 to June 30, 2024, first as an assistant professor and later as Chair of the School of Nursing.

(Compl., Doc. 1, ¶¶ 8, 10, 22–23). The faculty and staff at Bethune–Cookman—a private Historically Black College and University—is approximately 95% African-American. (*Id.* ¶ 25).

Mr. Ghareeb alleges that his immediate supervisor, Dr. Sandra Tucker, the Dean of the College of Nursing and Health Sciences, was "engaged in a systematic pattern of replacing non-African-American faculty with African-American faculty" and frequently discriminated against Mr. Ghareeb and other non-African-American faculty and job applicants on account of their race or national origin. (*Id.* ¶¶ 24, 26–27, 67).

Dr. Tucker allegedly encouraged discriminatory hiring practices in favor of African-American candidates to Bethune–Cookman faculty members, including: (1) to nursing faculty, that "[w]e're going to hire faculty in Nursing, but they won't be White"; (2) to Dr. Banks, the former Chair of the Public Health Department, that "[w]e're going to hire only Black people"; (3) to Dr. Banks, to "[m]ake sure all of your staff are Black"; and (4) to Dr. Miriam Griffen, that "[w]e're going to hire faculty in Nursing, but they won't be White, because White instructors will not understand Black students." (Doc. 1 ¶¶ 28–30).

Mr. Ghareeb alleges that African-American faculty members at Bethune–Cookman consistently received more favorable treatment than similarly situated non-African-American faculty. (*Id.* ¶ 61). This dissimilar treatment included: (1) no discipline for an African-American faculty member who

2

improperly moved his class online and failed to take students to clinical rotations for an entire semester, while non-African-American faculty were subject to discipline under similar circumstances, (Doc. 1 ¶¶ 62–63); (2) no remedial action taken against two African-American faculty members who violated school policy by moonlighting full-time at other institutions, (*id.* ¶¶ 64–65); and (3) no discipline for Ms. Spaulding, an African-American faculty member, when she "experienced [Assessment Technologies Institute] exam results that did not appear in the system," where non-African-American faculty were disciplined under similar circumstances, (*id.* ¶ 66). Additionally, Dr. Tucker nominated multiple less-qualified African-American faculty members for faculty awards in April 2024 instead of Mr. Ghareeb and other non-African-American members of the faculty who were better qualified. (*Id.* ¶¶ 40–42, 56).

Mr. Ghareeb alleges that Dr. Tucker repeatedly discriminated against non-African-American job applicants. (*Id.* ¶¶ 34–39). In March 2022, Mr. Ghareeb recommended Ms. Chulak, "a highly qualified Caucasian instructor," for a position in the nursing program. (Doc. 1 ¶ 34). Dr. Tucker initially accepted Mr. Ghareeb's recommendation, but upon seeing Ms. Chulak in person, Dr. Tucker allegedly declared that she did not like Ms. Chulak and refused to hire her without further discussion. (*Id.* ¶ 35). Dr. Tucker instead hired Ms. Spaulding and Dr. Mason, both of whom were less qualified African-American applicants. (*Id.* ¶ 36). Mr. Ghareeb also recommended Ms. Shea, a Caucasian

3

candidate, for a lab coordinator position, but again Dr. Tucker rejected Ms. Shea's application in favor of Ms. Davis, a less qualified African-American candidate. (*Id.* ¶¶ 38–39).

Mr. Ghareeb alleges that Dr. Tucker "mock[ed]" Dr. Shams, the former chair of the Public Health Department, and made "fun of his Indian heritage." (*Id.* ¶ 32). Additionally, the complaint lists by name Jamaican, Belizean, and Caucasian faculty members who departed from Bethune–Cookman because of Dr. Tucker. (Doc. 1 ¶ 67).

Mr. Ghareeb claims that he was personally discriminated against by Dr. Tucker despite the excellent performance evaluations he received throughout his tenure at Bethune–Cookman. (*Id.* ¶ 26). Mr. Ghareeb alleges that Dr. Tucker's "retaliatory conduct" against him started in July 2017, when Dr. Tucker falsely represented to human resources that Mr. Ghareeb was "ineligible to work in the [United States]." (*Id.* ¶ 43). Dr. Tucker's false assertion led to the non-renewal of Mr. Ghareeb's contract, a decision that Mr. Ghareeb fought and obtained reversal of in January 2018. (*Id.* ¶ 44).

The complaint alleges that Dr. Tucker's discriminatory actions resumed in November 2023, when Mr. Ghareeb, along with two African-American faculty members, voted to correct an incorrectly administered nursing exam. (*Id.* ¶ 45). Dr. Tucker prevented Mr. Ghareeb from readministering the exam but

permitted the two African-American faculty members to readminister their exams under similar circumstances. (Doc. 1 ¶ 46).

In January 2024, Dr. Tucker "humiliatingly" shouted at Mr. Ghareeb during Mr. Ghareeb's presentation to faculty on student retention problems in Bethune–Cookman's nursing program. (*Id.* ¶ 47–48). The following day, Dr. Tucker "abruptly and disrespectfully humiliated" Mr. Ghareeb because Mr. Ghareeb spoke with a vendor without Dr. Tucker's permission. (*Id.* ¶ 49). Dr. Tucker then frivolously accused Mr. Ghareeb of violating the school's academic integrity policies. (*Id.* ¶ 50). Because of Dr. Tucker's accusations, Mr. Ghareeb was suspended for six weeks, but he returned to his position in late February 2024 after a human resources investigation determined that Dr. Tucker's allegations were "unsubstantiated." (*Id.* ¶¶ 51–52). Following his return, Dr. Tucker significantly reduced Mr. Ghareeb's work responsibilities and excluded Mr. Ghareeb from a faculty meeting that was pertinent to his position. (Doc. 1 ¶¶ 53–54).

Mr. Ghareeb filed a formal complaint with human resources against Dr. Tucker on April 8, 2024. (*Id.* ¶ 55). Mr. Ghareeb then "escalated his concerns to Human Resources" on April 19, 2024, but Bethune–Cookman did not take any remedial action in response to Mr. Ghareeb's complaints. (*Id.* ¶ 57). That same month, Mr. Ghareeb received notice that his contract, which was set to expire on June 30, 2024, was not being renewed. (*Id.* ¶ 58). Mr. Ghareeb submitted a

formal grievance letter to the provost on May 28, 2024, but still Bethune–Cookman took no action. (*Id.* ¶¶ 59–60).

As a result of Dr. Tucker's discriminatory conduct, Mr. Ghareeb was diagnosed with anxiety, depression, and PTSD with panic attacks. (Doc. 1 ¶ 68). Mr. Ghareeb alleges that he filed a dual charge with the United States Equal Employment Opportunity Commission (EEOC) and the Florida Commission on Human Relations (FCHR) on November 19, 2024, claiming racial discrimination, national origin discrimination, and retaliation. (*Id.* ¶ 18). The EEOC issued Mr. Ghareeb a Notice of Right to Sue on August 18, 2025, (*id.* ¶ 19), and Mr. Ghareeb filed this lawsuit on November 15, 2025, (Doc. 1). Bethune–Cookman now moves to dismiss the complaint for failure to exhaust administrative remedies and failure to plead plausible claims. (Doc. 19).

## II.   LEGAL STANDARDS

"A pleading that states a claim for relief must contain . . . a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). "[D]etailed factual allegations" are not required, but "[a] pleading that offers 'labels and conclusions' or 'a formulaic recitation of the elements of a cause of action will not do.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007)). "To survive a [Rule 12(b)(6)] motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'"

*Id.* (quoting *Twombly*, 550 U.S. at 570). In considering a motion to dismiss brought under Rule 12(b)(6), a court limits its "consideration to the well-pleaded factual allegations, documents central to or referenced in the complaint, and matters judicially noticed." *LaGrasta v. First Union Sec., Inc.*, 358 F.3d 840, 845 (11th Cir. 2004).

## III. DISCUSSION

### A.    Administrative Prerequisites to Suit

"As a threshold matter, plaintiffs [in Title VII cases] . . . must first exhaust their administrative remedies . . . before bringing suit in district court." *E.E.O.C. v. STME, LLC*, 309 F. Supp. 3d 1207, 1211 (M.D. Fla. 2018) (citing 42 U.S.C. § 12117(a)), *aff'd*, 938 F.3d 1305 (11th Cir. 2019). These exhaustion requirements include filing an administrative charge with the EEOC, which prompts an agency investigation.[1] *See Pijnenburg v. W. Ga. Health Sys., Inc.*, 255 F.3d 1304, 1305 (11th Cir. 2001). "The exhaustion requirement serves the purposes of giving the employer notice of the alleged unlawful practices and allowing an agency the opportunity to conciliate before a lawsuit is filed." *Darby v. S.B. Ballard Constr. Co.*, No. 3:05-cv-199-J, 2005 WL 2077299, at *3 (M.D. Fla. Aug. 26, 2005).

"[A] 'plaintiff's judicial complaint is limited by the scope of the EEOC

---

[1] A charge filed with the EEOC is considered a dual filing with the FCHR. *See Woodham v. Blue Cross & Blue Shield of Fla., Inc.*, 829 So. 2d 891, 893 (Fla. 2002).

investigation which can reasonably be expected to grow out of the charge of discrimination.'" *Gregory v. Ga. Dep't of Human Res.*, 355 F.3d 1277, 1280 (11th Cir. 2004) (quoting *Alexander v. Fulton Cnty.*, 207 F.3d 1303, 1332 (11th Cir. 2000)). However, "'the scope of an EEOC complaint should not be strictly interpreted.'" *Id.* (quoting *Sanchez v. Standard Brands, Inc.*, 431 F.2d 455, 465 (5th Cir. 1970)).[2]

Bethune–Cookman argues that several "claims included in [Mr. Ghareeb's] Compliant" [sic] were not included in his administrative charge. (Doc. 19 at 12).[3] For example, the EEOC charge simply states that Mr. Ghareeb is "Middle Eastern," while the complaint adds that he is of "Jordanian" national origin. (*Id.*). Bethune–Cookman also, in exhausting detail, lists every allegation in the complaint that does not appear verbatim in the EEOC charge. (*See* Doc. 19 at 12–14). Having reviewed Mr. Ghareeb's EEOC charge and the allegations in the complaint, the Court finds Bethune–Cookman's line of argument to be meritless.

Mr. Ghareeb's charge alleged racial discrimination, national origin

---

[2] In *Bonner v. City of Prichard*, 661 F.2d 1206, 1209 (11th Cir. 1981) (en banc), the Eleventh Circuit adopted as binding precedent all decisions of the former Fifth Circuit handed down before October 1, 1981.

[3] Bethune–Cookman refers to the EEOC charge attached to its motion to dismiss. (Doc. 19-1). Because Mr. Ghareeb's EEOC charge provided by Bethune–Cookman "is central to" Mr. Ghareeb's claim and its authenticity is not challenged, the Court can consider the EEOC charge without converting the at-issue motion into a motion for summary judgment. *Day v. Taylor*, 400 F.3d 1272, 1276 (11th Cir. 2005).

8

discrimination, and retaliation—exactly the claims presently before this Court. (*Cf.* Doc. 19-1, *with* Doc. 1). The EEOC charge contains many of the details found in the complaint, including, *inter alia*, that: Dr. Tucker routinely passed over more qualified non-African-American job applicants in favor of less qualified African-American candidates; Dr. Tucker explicitly encouraged racial discrimination in hiring; African-American faculty avoided discipline for breaking university rules where non-African-American faculty did not; and Dr. Tucker berated Mr. Ghareeb during his presentation and made frivolous accusations that he violated the school's academic integrity policies. (*See generally* Doc. 19-1). That the complaint augments these allegations with additional detail is of no moment—a reasonable EEOC investigation into Mr. Ghareeb's charge would have uncovered the additional details that Bethune–Cookman complains were absent from the charge. Bethune–Cookman's argument is rejected. *See Patterson v. Ga. Pac., LLC*, 38 F.4th 1336, 1345 (11th Cir. 2022) (explaining that "[t]he facts alleged in the charge matter most for determining what can reasonably be expected to grow out of an EEOC charge").

### B.    Purported Failures to State a Claim

Bethune–Cookman also argues that Mr. Ghareeb's Title VII allegations fail to state a claim under the burden-shifting standard set forth in *McDonnell Douglas v. Green*, 411 U.S. 792 (1973). That argument misses the mark. "To state a race-discrimination claim under Title VII, a complaint need only 'provide

9

enough factual matter (taken as true) to suggest intentional race discrimination.'" *Surtain v. Hamlin Terrace Found.*, 789 F.3d 1239, 1246 (11th Cir. 2015) (quoting *Davis v. Coca–Cola Bottling Co. Consol.*, 516 F.3d 955, 974 (11th Cir. 2008)); *see also Burgess v. Palm Tran*, No. 24-10570, 2025 WL 2436148, at *2 (11th Cir. Aug. 25, 2025) (explaining that a Title VII plaintiff is "not required to plead only the *McDonnell Douglas* framework in order to satisfy the short-and-plain statement standard of Rule 8(a)"). "This is because *McDonnell Douglas's* burden-shifting framework is an evidentiary standard, not a pleading requirement." *Surtain*, 789 F.3d at 1246 (citing *Swierkiewicz v. Sorema N. A.*, 534 U.S. 506, 510 (2002)).

Mr. Ghareeb has met his burden here. Both the EEOC charge and the complaint set forth Dr. Tucker's alleged statements promoting racial discrimination in hiring and include myriad examples of African-American faculty and job candidates receiving preferential treatment. (*Cf.* Doc. 1, *with* Doc. 19-1). These allegations are sufficient at this stage of the case.[4]

Next, Bethune–Cookman argues that Mr. Ghareeb fails to state a claim for retaliation. (Doc. 19 at 21–25). "Title VII retaliation requires a plaintiff to plausibly allege that: (1) he engaged in statutorily protected expression; (2) he

---

[4] Bethune–Cookman's motion contains factual contentions related to Mr. Ghareeb's job performance that do not appear in the complaint. (Doc. 19 at 20). These contentions are improper at the motion-to-dismiss stage and will be disregarded. *See* Fed. R. Civ. P. 8.

10

suffered an adverse employment action; and (3) there was a causal link between the protected expression and the adverse action." *Norris v. Honeywell Int'l, Inc.*, No. 8:22-cv-1675, 2023 WL 6256183, at *18 (M.D. Fla. Sept. 26, 2023) (citing *Little v. United Techs., Carrier Transicold Div.*, 103 F.3d 956, 959 (11th Cir. 1997)). To prove causal connection, "the protected activity must be a 'but-for' cause of the adverse employment action." *Covarrubias v. Anthrex, Inc.*, No. 2:19-cv-553, 2020 WL 377005, at *3 (M.D. Fla. Jan. 23, 2020) (quoting *Banks v. iGov Techs., Inc.*, 661 F. App'x 638, 645 (11th Cir. 2016)). "The Eleventh Circuit has held that this can be shown by alleging 'close temporal proximity' between the protected activity and adverse action." *Id.* (quoting *Gupta v. Fla. Bd. of Regents*, 212 F.3d 571, 590 (11th Cir. 2000)).

Upon review, the Court finds that Mr. Ghareeb sufficiently pleaded that he engaged in an activity protected by Title VII and that an adverse employment action occurred as a result. The complaint alleges that Mr. Ghareeb reported Dr. Tucker's alleged race and national-origin discrimination and violations of the faculty handbook to human resources and the university provost on April 8, April 19, and May 28, 2024. (*See* Doc. 1 ¶¶ 55, 57, 59). The complaint discusses several adverse employment actions taken against Mr. Ghareeb from 2017 to 2024, but the culminating action—the termination of his contract—occurred on June 30, 2024, after all other relevant events in this case had occurred and in close temporal proximity to his complaints to human resources and the

11

university provost. (*See* Doc. 1 at ¶¶ 55, 57, 58, 59). Thus, Mr. Ghareeb has plausibly alleged retaliation. *See Thomas v. Cooper Lighting, Inc.*, 506 F.3d 1361, 1364 (11th Cir. 2007) (stating that "[t]he burden of causation can be met by showing close temporal proximity between the statutorily protected activity and the adverse employment action").

## IV.   CONCLUSION

For the reasons given above, it is **ORDERED** that Defendant, Bethune–Cookman University, Inc's motion to dismiss (Doc. 19) is **DENIED**. Bethune–Cookman shall file an answer to the complaint on or before **June 22, 2026**.

**DONE** and **ORDERED** in Orlando, Florida, on June 8, 2026.

JOHN ANTOON II
United States District Judge

Copies furnished to:
Counsel of Record